# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                    CRIMINAL ACTION


VERSUS                                                              No. 09-142


KEVIN PHILLIPS                                                SECTION "I"


## ORDER AND REASONS

Before the Court is a *pro se* motion[1] to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 motion") filed by defendant, Kevin Phillips ("Phillips").  The government opposes Phillips' motion and requests that the Court deny it without an evidentiary hearing.[2]  For the following reasons, the motion is **DENIED** without an evidentiary hearing.

### BACKGROUND

On May 14, 2009, Phillips, along with eight other individuals, was indicted in a thirteen-count indictment for violations of the Federal Controlled Substances Act.[3]  Count 1 of the indictment charged Phillips with conspiracy to possess with the intent to distribute 50 grams or more of cocaine base and 500 grams or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B), all in violation of 21 U.S.C. § 846.[4]

---

[1] R. Doc. Nos. 318 and 323.

[2] R. Doc. No. 320.

[3] R. Doc. No. 1.

[4] R. Doc. No. 1, p. 2.  Phillips was also charged in counts 4, 5, 6, 7, 8, 10, 11, and 12 of the indictment.  R. Doc. No. 1, pp. 3-6.

On November 12, 2009, Phillips pled guilty to Count 1 pursuant to a plea agreement.[5]  In exchange for his guilty plea, the government agreed to ask the Court to dismiss the remaining eight counts of the indictment.[6]  The government also agreed that Phillips was entitled to a three-level reduction in his guideline offense level for his timely acceptance of responsibility.[7]  The terms of the plea agreement expressly provided that Phillips waived his right to appeal his conviction and/or sentence and waived his right to contest his conviction and/or sentence in a collateral proceeding pursuant to 28 U.S.C. § 2241 and 28 U.S.C. § 2255.[8]  Phillips reserved the right to bring a post-conviction claim if he established that ineffective assistance of counsel directly affected the validity of his appellate waiver and collateral challenge rights or the validity of the guilty plea itself.[9]  Phillips also reserved the right to bring a direct appeal of any sentence imposed in excess of the statutory maximum.[10]

The plea agreement stated that Phillips' penalties for pleading guilty included a mandatory minimum of ten years imprisonment and a maximum of life imprisonment, a fine of

---

[5] R. Doc. Nos. 162 and 164.

[6] R. Doc. No. 164, p. 2.

[7] R. Doc. No. 164, p. 2.

[8] R. Doc. No. 164, p. 3.

[9] R. Doc. No. 164, p. 3.

[10] R. Doc. No. 164, p. 3.  The waiver provisions of Phillips' plea agreement stated:

> Except as otherwise provided in this paragraph, the defendant hereby expressly waives his rights to appeal from his conviction and/or sentence, including but not limited to any appeal rights conferred by Title 28, United States Code, Sections 1291, and by Title 18, United States Code, Section 3742. The defendant further waives his right to contest his conviction and/or his sentence in any collateral proceeding, including proceedings brought under Title 28, United States Code, Section 2241 and Title 28, United States Code, Section 2255, on any ground, except that the defendant may bring a post conviction claim if the defendant establishes that ineffective assistance of counsel directly affected the validity of this waiver of appeal and collateral challenge rights or the validity of the guilty plea itself. Subject to the foregoing, the defendant reserves the right to bring a direct appeal of any sentence imposed in excess of the statutory maximum.

$4,000,000 or the greater of twice the gross gain to Phillips or twice the gross loss to any person

under 18 U.S.C. § 3571 and 21 U.S.C. § 841(b)(1)(A), a mandatory special assessment of $100,

and a period of at least five years of supervised release following any term of imprisonment.[11]

The U.S. Probation office completed a presentence investigation report and at his

sentencing hearing on February 18, 2010, the Court sentenced Phillips to a term of 188 months

imprisonment.[12]  The Court also imposed a five-year term of supervised released.[13]  Upon the

government's motion, the Court dismissed counts 4, 5, 6, 7, 8, 10, 11, and 12 of the indictment.[14]

Phillips filed this § 2255 motion arguing that his attorney, Claude Kelly, denied him his

Sixth Amendment right to effective assistance of counsel during his November 12, 2009 re-

arraignment hearing.  First, Phillips argues that his attorney failed to investigate the facts of his

case and that this ineffective assistance "affected the validity of his appeal waiver, factual basis,

or plea itself" because based on this factual basis, at sentencing, the Court found that Phillips had

a leadership role in the conspiracy pursuant to U.S.S.G. § 3B1.1.[15]  Second, Phillips asserts that

his attorney provided ineffective assistance because the attorney promised him that the Court

would sentence him to the mandatory minimum punishment of ten years (120 months)

imprisonment and that this promise was not "fulfilled" because he received 188 months

imprisonment.[16]  Third, Phillips contends that his attorney provided ineffective assistance

---

[11] R. Doc. No. 164, p. 2.

[12] R. Doc. Nos. 204 and 209.

[13] R. Doc. No. 209, p. 3.

[14] R. Doc. No. 209, p. 1.

[15] R. Doc. No. 318, p. 17.

[16] R. Doc. No. 318, p. 21.

because he failed to file a notice of appeal when Phillips requested that he do so.[17]  Fourth, Phillips asserts that, as a result of the United States Supreme Court's recent decision in *United States v. DePierre*, 564 U.S. ___, 131 S.Ct. 2225, 180 L.Ed.2d 114 (2011), "the government must establish the scientific identification of a substance in order to 'prove beyond a reasonable doubt' that the substance alleged at the entry of plea is in fact a substance that violates the provisions of law under which [the defendant] is charged in the indictment," and because the government failed to do so in Phillips' case, the Court must vacate his sentence.[18]

## *LAW AND ANALYSIS*

### I.  Overview of § 2255

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States,* 368 U.S. 424, 426-27, 82 S.Ct. 468, 470, 7 L.Ed.2d 417 (1962).  Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed.  *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir.1999).  "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction . . . ." *United States v. Hayman*, 342 U.S. 205, 222-23, 72 S.Ct. 263, 274, 96 L.Ed. 232 (1952).  The inquiry does not extend to the misapplication of sentencing guidelines.  *See Williamson*, 183 F.3d at 462.

---

[17] R. Doc. No. 318, p. 23.

[18] R. Doc. No. 323, p. 3.  Phillips advances his fourth argument in a "Supplemetnt [sic] to 28 U.S.C. § 2255."

4

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir.1992) (citing *Andrews v. United States*, 373 U.S. 334, 339, 83 S.Ct. 1236, 1239, 10 L.Ed.2d 383 (1963)).  Pursuant to § 2255, the Court must grant defendant a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).  If the court determines that the prisoner is entitled to relief, "[it] shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

The U.S. Fifth Circuit Court of Appeals has held that a defendant may waive his right to appellate review and to post-conviction relief pursuant to 28 U.S.C. § 2255 if the waiver was knowing and voluntary.  *United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002) (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)); *see also United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000).  For such a waiver to be knowing and voluntary, the defendant must know that he had a right to seek appellate and collateral review and that he was giving up that right.  *See United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994) (discussing waiver of appellate rights).

A claim of ineffective assistance of counsel may survive a waiver "when the claimed assistance directly affected the validity of that waiver or the plea itself."  *White*, 307 F.3d at 343.[19]  As long as the plea and the waiver themselves were knowing and voluntary and the

---

[19] Additionally, a waiver cannot be enforced to bar review of a sentence that exceeds the statutory maximum or where the defendant correctly contends that the indictment clearly does not state an offense or where the factual basis for the plea agreement does not show that the defendant committed an offense. *White*, 307 F.3d at 341, n.2; *United States v. Hollins*, 97 Fed. App'x 477, 479 (5th Cir. 2004).

contested issue is the proper subject of a waiver, "the guilty plea sustains the conviction and sentence and the waiver can be enforced." *White*, 307 F.3d at 343-44.

## II. Standard for Ineffective Assistance of Counsel

The United States Supreme Court set forth the standard for judging the performance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Court articulated a two-part test for evaluating claims of ineffective assistance of counsel that requires the petitioner to prove (1) deficient performance and (2) resulting prejudice. *Strickland*, 466 U.S. at 697. Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the Court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (*citing Strickland*, 466 U.S. at 689). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal v. Puckett*, 286 F.3d 230, 236-37 (5th Cir. 2002). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of

reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 701, 122 S.Ct. 1843, 1854, 152 L.Ed.2d 914 (2002) (*citing Strickland*, 466 U.S. at 689). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland,* 466 U.S. at 689.

The second prong of the *Strickland* test looks to the prejudice caused by counsel's deficient performance. This requires "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *United States v. Mullins,* 315 F.3d 449, 456 (5th Cir. 2002) (*quoting Strickland*, 466 U.S. at 687). "[T]he defendant must show that counsel's errors were prejudicial and deprived defendant of a 'fair trial, a trial whose result is reliable.' " *United States v. Baptiste*, 2007 WL 925894, at *3 (E.D. La. Mar. 26, 2007) (Engelhardt, J.) (*quoting Strickland,* 466 U.S. at 687). "This burden generally is met by showing that the outcome of the proceeding would have been different but for counsel's errors." *Id.*

A defendant must satisfy both prongs of the *Strickland* test in order to be successful on an ineffective assistance claim. *See Strickland*, 466 U.S. at 697. A court deciding an ineffective assistance of counsel claim is not required to address these prongs in any particular order. *Id.* If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id.*

In *Hill v. Lockhart,* the United States Supreme Court held that the two-part *Strickland* standard was applicable to challenges to guilty pleas based on ineffective assistance of counsel. 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). With respect to the prejudice prong of *Strickland*, the defendant must show "that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."
*United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (*quoting Lockhart*, 474 U.S. at 59).

### III.  Counsel's Alleged Promise of the Mandatory Minimum Sentence

The Court begins by addressing Phillips' second argument because it is the most serious of his allegations.  Phillips argues that his attorney promised that he would receive the mandatory minimum sentence of ten years – 120 months – imprisonment in exchange for his plea.[20]  At his sentencing, Phillips received a term of 188 months imprisonment.[21]  The Court notes that when " 'a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea.' "  *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000) (quoting *McKenzie v. Wainwright*, 632 F.2d 649, 651 (5th Cir. 1980)).  Nevertheless, "a habeas petitioner must present 'more than uncorroborated assertions of a broken plea agreement' in order to be entitled to an evidentiary hearing on the voluntariness of his plea."  *United States v. Merrill*, 2008 WL 2355728, at *14 (E.D. La. June 5, 2008) (Fallon, J.) (quoting *United States v. McCord*, 618 F.2d 389, 393 (5th Cir. 1980)), *aff'd* 340 Fed. App'x 976 (5th Cir. 2009).  "[M]ere contradictions of [the defendant's] statements at the guilty plea hearing will not carry his burden."  *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986).

Phillips argues that his plea was involuntary because he pled guilty on the belief that he would only be sentenced to the mandatory minimum sentence of 10 years imprisonment. Phillips contends that his counsel went so far as to admit, on the record at the re-arraignment

---

[20] R. Doc. No. 318, p. 21.

[21] R. Doc. No. 209, p. 3.

hearing, that he promised Phillips that he would receive the mandatory minimum.[22]  The portion of the re-arraignment transcript that Phillips cites in no way establishes that Phillips' counsel promised him the mandatory minimum.[23]

Fed. R. Crim. P. 11(b)(1)(I) requires that a defendant be informed of any mandatory minimum penalty he may face by pleading guilty.  Counsel's response to the Court's questioning indicates that he informed Phillips of the mandatory minimum sentence that the Court would be required – at the very least – to impose, not that he promised that the Court would sentence Phillips to the mandatory minimum term of imprisonment.

At the same time, a defendant's statements at a plea colloquy are afforded "great weight." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002) (footnote omitted).  A "defendant ordinarily will not be heard to refuse [his] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (citing *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985)).  "Solemn declarations in open court carry a strong presumption of verity." *Id.* (citing *Blackledge v. Allison*, 431 U.S. 63, 73, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)).  The Court questioned Phillips whether he was pleading guilty in exchange for any promises of leniency[24] and whether any person had promised that he would receive a specific sentence.[25] Phillips, under oath, responded negatively.  The Court also questioned Phillips about whether he

---

[22] R. Doc. No. 318, p. 22.

[23] R. Doc. No. 318-2, p. 21.  Phillips highlights the portion of the re-arraignment transcript where the Court asked counsel "Have you made any representations to him as to the sentence I will impose?," and counsel answered, "[o]ther than the mandatory minimum by statute, no, Your honor."  R. Doc. No. 318-2, p. 21.

[24] R. Doc. No. 318-2, p. 13.  **The Court:** "Have you been influenced or persuaded in any way to plead guilty because of any promises of leniency or other things made by anyone?"  **The Defendant:** "No, sir."

[25] R. Doc. No. 318-2, pp. 19-20.  **The Court:** "Has anyone connected with the government, anyone connected with law enforcement or anyone else at any time, other than rough estimates of the Sentencing Guidelines, made any prediction or promise to you as to what your sentence will be?"  **The Defendant:** "No, sir."

understood that the Court could impose the maximum possible sentence of life imprisonment.[26]

Phillips, under oath, responded affirmatively.  Consequently, Phillips' statements at his re-

arraignment show that he understood that the Court had a right to sentence him to a term of, at

most, life imprisonment.

Furthermore, in order to be entitled to an evidentiary hearing with respect to whether

counsel promised him he would receive the mandatory minimum sentence, the existing record

must "prove[] the likely merit of [his] specific allegations of a promise."  *Cervantes*, 132 F.3d at

1111.  In addition, Phillips must present "independent indicia of the likely merit of his

allegations."  *United States v. Merrill*, 340 Fed. App'x 976, 978 (5th Cir. 2009) (citing

*Cervantes*, 132 F.3d at 1110).  The record does not show that Phillips' allegations have any merit

and Phillips has not presented any independent indicia of his allegations.  Phillips has not

provided the Court with "affidavits from reliable third parties establishing the terms of the

alleged promise, the time and place of the promise, or the identity of any eyewitnesses to the

promise."  *Id.* (citing *Cervantes*, 132 F.3d at 1110).  Likewise, Phillips' "own affidavit,

containing self-serving, conclusional allegations, is insufficient."[27]  *Id.* (citing *Cervantes*, 132

F.3d at 1110 and *United States v. Demik*, 489 F.3d 644, 646-47 (5th Cir. 2007), *cert. denied*, 552

U.S. 982, 128 S.Ct. 456, 169 L.Ed.2d 319 (2007)).

---

[26] R. Doc. No. 318-2, pp. 9-10.  **The Court:** "[T]he maximum possible sentence that could be imposed on you in the event of a conviction with respect to Count 1 of the indictment, either upon a plea of guilty or after a trial in which you're found guilty, is a maximum term of life imprisonment . . . . Now, do you fully understand if I accept your guilty plea I could impose the maximum possible sentence I just related to you?"  **The Defendant:** "Yes, sir."

[27] Phillips' affidavit states that "I was also informed by counsel prior to pleading guilty, that I should just go into the court room [sic] and agree with everything the judge asks me, and he would resolve everything with the prosecutor. He told me by doing so I would get the mandatory minimum of 10 years."  R. Doc. No. 318, p. 24.

Given that the Court must afford great weight to Phillips' statements at the plea colloquy that no improper influence or promises induced him to plead guilty, and given that Phillips has failed to provide any independent indicia of the merits of his allegations that counsel promised that he would be sentenced to the mandatory minimum of ten years imprisonment, the Court finds that Phillips has failed to meet his burden and that he is not entitled to an evidentiary hearing with respect to this issue.

## IV.  Counsel's Alleged Failure to Investigate

Phillips further argues that his attorney allegedly failed to investigate the factual basis of his plea.  Counsel's allegedly deficient investigation concerns Brian Riggins ("Riggins"), an unindicted member of the conspiracy.[28]  During his plea colloquy, Phillips asserts that he

---

[28] R. Doc. No. 318, p. 18.  (The Court notes that Riggins was indicted in the Eastern District of Louisiana on May 14, 2009, the same day that Phillips was indicted in Case No. 09-142, in a separate criminal matter for possession with intent to distribute crack and powder cocaine and several counts of possession of a firearm in furtherance of a drug trafficking crime.  Case No. 09-143, R. Doc. No. 1).  Brian Riggins is mentioned two times in the factual basis that Phillips signed.  R. Doc. No. 165.

On page 6, the factual basis states:
> On November 3, 2008, RODNEY WALKER called KEVIN PHILLIPS and stated that "B"/ "Snag", who is in fact Brian Riggins, dropped off a "half [kilogram]."  KEVIN PHILLIPS asked if CHARLES WALKER paid for it.  RODNEY WALKER responded "yes."

On page 10, the factual basis states:
> During the month of February and March 2009, JPSO Officers received information from a confidential informant that Brian Riggins was storing and distributing a large amount of cocaine from his residence, 1845 Stall Drive, Harvey, and vehicle, a 2003 Chevrolet Tahoe.

> On March 4, 2009, a state search warrant was secured for 1845 Stall Drive.  During the search of 1845 Stall Drive, a residence Riggins shared with his girlfriend, Officers found the following: 144 grams of cocaine hydrochloride, 73.4 grams of cocaine base ("crack"), drug paraphanlia [sic], nine packages of a compressed cocaine hydrochloride weighing approximately 10 kilograms, $59,907, and four firearms, one of which was a shotgun whose barrel had been illegally shortened and altered.

> Riggins, after being read his Miranda rights and declining to make a recorded statement did, in fact, make a non-recorded statement.  He stated that everything the officers located was his and his alone and that his girlfriend had nothing to do with any of it.  Moreover, Riggins stated that because he has previous convictions, he could not get a legitimate job and had to do what he had to do to get by and takes full responsibility for his actions.

protested Riggins's inclusion in the factual basis.[29]  Phillips contends that he told the Court that

he did not know Riggins and that he requested that references to Riggins be removed from the

factual basis.[30]  According to Phillips, had his attorney "proper[ly]" investigated his case and

insisted that the paragraphs containing Riggins be removed from the factual basis, he would not

have been assessed a two-point enhancement based on this factual basis pursuant to § 3B1.1 at

sentencing for having a leadership role in the conspiracy and, as a result, "his sentence would

have been less harsh."[31]

      Phillips essentially asserts that due to his attorney's failure to do a "proper investigation

into the correct information [that should have been] presented in the factual basis," his plea was

neither knowing nor voluntary.[32]  *Lockhart* explains that:

> where the alleged error of counsel is a failure to investigate or discover potentially
> exculpatory evidence, the determination whether the error "prejudiced" the
> defendant by causing him to plead guilty rather than go to trial will depend on the
> likelihood that discovery of the evidence would have led counsel to change his
> recommendation as to the plea.  This assessment, in turn, will depend in large part
> on a prediction whether the evidence likely would have changed the outcome of a
> trial.

*Lockhart,* 474 U.S. at 59.

      A defendant's counsel "has a duty to make a reasonable investigation of defendant's case

or to make a reasonable decision that a particular investigation is unnecessary." *Smith v. Dretke*,

422 F.3d 269, 283-84 (5th Cir. 2005) (citing *Ransom v. Johnson,* 126 F.3d 716, 723 (5th Cir.

---

At the plea colloquy, the government argued that the November 3, 2008 telephone call established that Riggins was
an unindicted member of the conspiracy.  R. Doc. No. 318-2, p. 40.

[29] R. Doc. No. 318-2, p. 39.

[30] R. Doc. No. 318, pp. 18-19.

[31] R. Doc. No. 318, p. 20.

[32] R. Doc. No. 318, p. 20.

1997)).  While defense counsel is "not required to pursue every path until it bears fruit or until all conceivable hope withers," *Lovett v. Florida*, 627 F.2d 706, 708 (5th Cir. 1980), an attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance.  *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994).  Under *Strickland*, a defendant "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted), *cited in United States v. Goodley*, 183 F. App'x 419, 422-23 (5th Cir. 2006).

Even if the Court were to assume *arguendo* that Phillips' attorney was deficient for allegedly failing to "investigate" Riggins's relationship to this conspiracy, Phillips cannot demonstrate how his attorney's alleged deficient performance resulted in prejudice.  Again, to show prejudice, Phillips must demonstrate that his attorney would have changed his recommendation such that Phillips would have gone to trial instead of pleading guilty.  *Lockhart*, 474 U.S. at 59.  The Court's analysis of whether Phillips would have gone to trial depends on whether "the evidence likely would have changed the outcome of a trial." *Id.*  The Court finds that such evidence would not have changed the outcome of a trial because Phillips admitted under oath that he in fact participated in the telephone call that links Riggins to the conspiracy to which Phillips pled guilty.

As he argues in his petition, Phillips did raise his concerns regarding Riggins at his re-arraignment.  This Court carefully addressed Phillips' objection because the Court sought to ensure that Phillips' plea was "knowing, voluntary and intelligently made."[33]  Upon questioning

---

[33] **The Court:** "No, you don't have to go with anything. If you don't agree with [the factual basis], then you need to tell me that. And if you – let me tell you, I'm not in the interest – I have no interest in taking guilty pleas from

by the Court, Phillips stated that he knew Brian Riggins "from on the street" but that he did not know Riggins was involved in the instant conspiracy.[34]  The Court then asked the Assistant U.S. Attorney about Riggins's role in the conspiracy.  The government indicated that that a telephone call between Phillips and another co-defendant, Rodney Walker, linked Riggins to the conspiracy.[35]  The Court reiterated[36] to Phillips the nature of a conspiracy and the fact that the government was not required to prove that Phillips knew all of the members involved in the conspiracy.[37]  After this extended colloquy, the Court again asked Phillips whether he

---

somebody who may not want to plead guilty or admit their guilt. So if you don't want to do that, I have no problem with that.  We'll cancel this right now and we'll go to trial, okay? Not now, but on the date set for trial.

So you're not doing me any favors by saying 'I'll go with it.'  I'm not interested in knowing whether you want to go with it or not. I want to know whether you did the acts charged in Count 1 of the indictment and whether there's a factual basis for it and the plea is knowing, voluntary and intelligently made.  Do you understand that?"  R. Doc. No. 318-2, pp. 42-43.

[34] **The Court:** "You say you don't know Brian Riggins; right?"
**The Defendant:** "I know him from on the street, but I haven't – I don't know nothing about none of this – "
**The Court:** "You had no idea that he was involved with cocaine?"
**The Defendant:** "I was in prison at that time."  R. Doc. No. 318-2, p. 39.

[35] **The Court:** "All right.  So how do you tie Mr. Riggins into this conspiracy?  How does the government do that?"
**[Assistant U.S. Attorney] Toomey:** "Your Honor, if I could direct the Court's attention to page 6.  In the third full paragraph it states: 'On November 3rd, 2008, Rodney Walker called Kevin Phillips and stated that 'B'/'Snag', who is, in fact, Brian Riggins, dropped off a, 'half kilogram.'  Kevin Phillips asked if Charles Walker paid for it.  Rodney Walker responded, 'Yes.'

That is, indeed, the same Brian Riggins that is mentioned towards the end of the factual in paragraphs –"
**The Court:** "Page 10."
**Mr. Toomey:** "– on page 10.

The government believes that that establishes that Brian Riggins was an unindicted member of this conspiracy . . . ."  R. Doc. No. 318-2, pp. 39-40.

[36] **The Court:** "[F]irst of all, you don't even have to know all the members of the conspiracy.  That's not legally required.  And you don't have to have direct dealings with all the members of the conspiracy for you to be guilty of a drug conspiracy."  R. Doc. No. 318-2, p. 40.

[37] The Court had previously informed Phillips, when it outlined the elements of the conspiracy offense, that "[y]ou may become a member of a conspiracy without knowing all of the details of the unlawful scheme or the identities of all the other alleged conspirators.  If you understood the unlawful nature of the plan or scheme and knowingly and intentionally joined in that plan or scheme on one occasion, that's sufficient to convict you of conspiracy even though you did not participate before and even though you played only a minor part."  R. Doc. No. 318-2, p. 7.

participated in the telephone call at issue.[38]  Phillips acknowledged that he had.[39]  Finally, the

Court inquired whether Phillips had any other problems with the factual basis; he indicated that

he did not and he restated that he wanted to plead guilty.[40]

Consequently, the exchange between the Court, the government, and Phillips at his re-

arraignment establishes that any investigation into the facts of the conspiracy would not have led

Phillips' attorney to change his recommendation *vis-à-vis* going to trial versus pleading guilty.

Phillips admitted that he participated in the relevant phone call.  As discussed above, a

---

[38] **The Court:** "Okay, so that being said, do you deny that that [the telephone call with Rodney Walker] occurred on November the 3rd, 2008, as set forth in the factual basis?"
**The Defendant:** "No, sir."
**The Court:** "You don't deny it?"
**The Defendant:** "No"
**The Court:** "So you knew that a half a kilogram had been dropped off and that Charles Walker had paid for it; is that right?"
**The Defendant:** "Yes, sir."
**The Court:** "All right. And you had that conversation; correct?"
**The Defendant:** "Yes sir."  R. Doc. No. 318-2, p. 43.

[39] *Id.*

[40]**The Court:** "Okay. Are there any other issues you have with the factual basis that you've not told me about?"
**The Defendant:** "No, sir."
**The Court:** "Are those the only things?"
**The Defendant:** "Yes, sir."
**The Court:** "Okay. And do you understand that later on you're not going to be able to come back here and say, 'I dispute the factual basis and I want to withdraw the plea.' The court won't let you do that."
**The Defendant:** "Yes, sir."
**The Court:** "So when you sign this agreement, I thought that you had approved, because it says, 'Read and Approved,' everything in this factual basis. You told me you read; right?"
**The Defendant:** "Yes, sir."
**The Court:** "So now you're telling me there are a couple of things that you have a dispute about and we've talked about those. Is there anything else in the factual basis that you have a question about?"
**The Defendant:** "No, sir"
**The Court:** "Are you sure you want to plead guilty or do you want to go to trial?"
**The Defendant:** "Yes, sir."
**The Court:** "I'm sorry?"
**The Defendant:** "Yes, sir."
**The Court:** "All right. Do you want – yes, sir, you want to plead guilty?"
**The Defendant:** "Yes, sir."
**The Court:** "All right. Now, do you have any other questions you want to ask the Assistant U.S. Attorney, your counsel or the Court about?"
**The Defendant:** "No, sir."  R. Doc. No. 318-2, pp. 44-46.

defendant's statements at a plea colloquy are afforded "great weight." *Cothran*, 302 F.3d at 283-84.  Any further investigation by counsel into Riggins's role of the conspiracy likely would have only strengthened the recommendation to plead guilty.  Indeed, by the time Phillips entered his plea, seven other co-defendants in this case had already pled guilty[41] and agreed to testify against any co-defendants who proceeded to a jury trial.[42]  Moreover, Phillips was able  to secure a three-level reduction in his guideline offense level for his timely acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 for pleading guilty.[43]  In sum, as Phillips cannot demonstrate that his attorney likely would have changed his recommendation regarding whether to plead guilty or go to trial, Phillips cannot show that his attorney's performance caused him any prejudice.  Accordingly, Phillips is unable to establish that he received ineffective assistance of counsel, *Strickland*, 466 U.S. at 697, and the Court finds that his plea was knowing and voluntary.  To the extent that Phillips also argues that this same alleged ineffective assistance directly affected his waiver of appellate and collateral challenge rights, the Court further finds for the same reasons that his waiver was knowing and voluntary.[44]  Accordingly, the Court will enforce his waiver of appellate and collateral challenge rights.

---

[41]R. Doc. Nos. 127 through 133.

[42] R. Doc. Nos. 136 through 142.

[43] R. Doc. No. 164, p. 2.

[44] The Court notes that at the plea colloquy, the Court also thoroughly questioned Phillips to ensure that his waiver of appeal and collateral challenge rights were knowing and voluntary:

**The Court: "**Now, as part of your plea agreement you have waived your right, in most respects, to appeal your conviction and/or sentence.
    You further waive your right to contest your conviction and your sentence in any collateral proceeding pursuant to 28, U.S.C., Section 2255.  You have reserved the right, however, to bring a direct appeal of any sentence imposed in excess of the statutory maximum. You may also challenge your conviction or sentence if you can show that you received ineffective assistance of counsel and the claimed ineffective assistance directly affected the validity of your plea or the waiver of appeal.

### V.  Counsel's Alleged Failure to File a Notice of Appeal

Phillips asserts that he requested that his attorney file a notice of appeal, that his attorney refused to do so, and as a result he received ineffective assistance of counsel.  The Court finds that because Phillips, in fact, did receive an appeal, he consequently was not prejudiced by Kelly's alleged deficient performance.[45]

Following his sentencing, Phillips timely filed his own *pro se* notice of appeal and a motion requesting that he be appointed appellate counsel on February 24, 2010.[46]  The U.S.

---

The waiver of appeal in a plea agreement would also not be enforced to bar a direct appeal where the indictment does not state an offense and where the factual basis for the plea did not show the commission of an offense.  Otherwise, you have no right to appeal or collaterally attack your conviction or your sentence.

Now, you understand that with the exception of the situations I just listed, you're waiving your right to appeal and collaterally attack your conviction or sentence?"

**The Defendant:**  "Yes, sir."

**The Court:** "Have you had a chance to discuss the waiver with counsel?"

**The Defendant:** "Yes, sir."

**The Court:** "Did your counsel explain the waiver to you, including the rights you are and are not giving up?"

**The Defendant:** "Yes, sir."

**The Court:** "Are you satisfied with the advice your attorney gave you regarding the waiver?"

**The Defendant:** "Yes, sir."

**The Court:** "Do you have any questions about the waiver?"

**The Defendant:** "No, sir."

**The Court:** "Did anyone coerce you or promise you into enter [sic] – for entering into the waiver?"

**The Defendant:** "No, sir."

**The Court:** "Are you entering this waiver voluntarily and of your own free will?"

**The Defendant:**  "Yes, sir"

**The Court:** "Are you satisfied that you understand the waiver?"

**The Defendant:**  "Yes, sir"

**The Court:** "Do you understand that in addition to giving up your right to direct appeal you're also giving up your right to later file any type of challenge to your conviction or sentence under a particular provision of the law known as title 28, U.S.C., Section 2255 allows defendants to challenge whether their sentence and conviction were constitutional?"

**The Defendant:** "Yes, sir."  R. Doc. No. 318-2, pp. 17-19.

[45] Phillips' attorney, Claude Kelly ("Kelly"), has filed an affidavit swearing that Phillips asked him on one occasion, while they were standing at the podium immediately after this Court announced his sentence on February 11, 2010, to file an appeal.  Kelly swears that he reminded Phillips that he had waived his right to any appeal and that the Court had just rejected the government's motion for an upward departure and instead had sentenced Phillips to the absolute bottom of the guideline range as Kelly had requested.  After this exchange, Kelly swears that Phillips never again requested for Kelly to file a notice of appeal.  R. Doc. No. 320-3.

[46] R. Doc. No. 219.

Magistrate Judge granted Phillips' motion appointing counsel.[47]  Phillips' appointed counsel filed an *Anders* brief with the Fifth Circuit, arguing that Phillips had no non-frivolous bases for appeal and requesting that she be permitted to withdraw.[48]  Phillips did not file any response.[49] After reviewing the brief and the record, the Fifth Circuit "concur[red] with counsel's assessment that the appeal presents no nonfrivolous issue for appellate review" and dismissed the appeal.[50]

As this Court has previously explained, in *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77, 120 S.Ct. 1029,1034, 145 L.Ed.2d 985 (2000), the U.S. Supreme Court held that the *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal:

> *Flores-Ortega* essentially established three categories for determining whether counsel's failure to appeal meets *Strickland's* objectively unreasonable prong.
>
> First, *Flores-Ortega* states that an attorney who disregards specific instructions from a defendant to file a notice of appeal acts in a professionally unreasonable manner. *Id.* at 477, 120 S.Ct. at 1035. Second, by contrast, a defendant who expressly tells his attorney *not* to file an appeal cannot later claim that counsel performed deficiently, if counsel has acted in accordance with the defendant's wishes. *Id.*

---

[47] R. Doc. No. 230.

[48] Phillips' appointed appellate counsel represented to the Fifth Circuit that she informed Phillips, in writing and on two separate occasions, that he did not have any non-frivolous bases on which to appeal.  Case No. 10-30203, R. Doc. No. 00511351243, p. 12.

[49] R. Doc. No. 316, p. 2.  In a letter dated January 27, 2011 (Case No. 10-30203, R. Doc. No. 00511414267), the Fifth Circuit informed Phillips:

> Your court-appointed attorney has moved to withdraw as your counsel in the above case.
>
> Under Anders v. California, 386 U.S. 738, (1967), you have the right to respond to your counsel's motion raising any points you choose showing why your appeal has merit and why the court should consider your case.  You should state the facts and legal authorities why you think your conviction should be reversed.  You have 30 days to respond. . . .
>
> If you do not file a response within 30 days, the court will review counsel's brief and decide whether the appeal is frivolous. . . .

[50] R. Doc. No. 316, pp. 2-3.

> The difficulty arises in the third category, namely those situations in which a defendant has not clearly expressed whether he desires to appeal. For this third category, *Flores-Ortega* established a further test to determine whether counsel was deficient in not filing a notice of appeal. *Id.* at 480, 120 S.Ct. at 1036. Under the test, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal, . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* In making this determination, the Court must consider all information that counsel knew or should have known. If counsel fails to consult defendant about filing an appeal where this duty is imposed, counsel's performance is deficient and the first prong of *Strickland* is satisfied. *See id.*

*United States v. Hutchinson*, 2007 WL 2127598, at *2-3 (E.D. La. July 24, 2007) (Africk J.).

Furthermore, the Fifth Circuit extended the *Flores-Ortega* framework in *United States v. Tapp*, 491 F.3d 263 (5th Cir. 2007) to cases where a defendant has waived his appellate rights.

In *Tapp*, the Fifth Circuit announced that:

> Today, we join our sister circuits in holding that the rule of *Flores-Ortega* applies even where a defendant has waived his right to direct appeal and collateral review. In such circumstances, if the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver.

*Id.* at 266 (footnote omitted).

Phillips received an appeal.  He failed to raise any arguments addressing why his appeal had merit.  As such, Phillips has already received the remedy that the Fifth Circuit set forth in *Tapp*.  Even if the Court were to assume *arguendo* that Phillips can show by a preponderance of the evidence that Kelly failed to file a notice of appeal at Phillips' request,[51] and thus Kelly was

---

[51] Phillips' affidavit states that he was unhappy with his sentence "so I asked counsel to appeal my sentence.  I received no response from counsel."  R. Doc. No. 318, p. 25.  Phillips does not address the time frame within which he asked for an appeal, his discussion with Kelly about any bases for an appeal, or whether he persisted in his request for an appeal after receiving Kelly's advice.

objectively deficient in his performance under *Flores-Ortega* and *Strickland*, Phillips was not prejudiced.

### VI.  Phillips' Argument Based on *United States v. DePierre*

Phillips' final point of contention, essentially, is that the government failed to prove beyond a reasonable doubt the type and quantity of drugs to which he pled guilty.  Phillips relies on the U.S. Supreme Court's recent decision in *United States v. DePierre*, 564 U.S. ___, 131 S.Ct. 2225, 180 L.Ed.2d 114 (2011) as authority for his argument.  The Court notes that the Supreme Court's decision in *DePierre* was decidedly narrow and it does not support Phillips' assertion.  The question presented in *DePierre* was whether the text of 21 U.S.C. § 841(b)(1)(A)(iii), wherein 50 grams or more of "cocaine base" triggers the mandatory minimum ten-year sentence, encompasses solely crack cocaine or any form of cocaine in its "basic form." The Supreme Court upheld the U.S. First Circuit Court of Appeals' decision that "cocaine base" refers to cocaine in its "basic form," and not solely crack cocaine.  *DePierre*, 564 U.S. at ___, 131 S.Ct. at 2237.  *DePierre* is inapplicable to this case.

Furthermore, the Court finds Phillips' argument unavailing for two reasons.  First, as previously discussed, the Court found that Phillips made a knowing and voluntary waiver of his appellate and collateral challenge rights.  Consequently, this waiver serves to bar any collateral attack that – like this final argument – is not predicated on ineffective assistance of counsel.

Second, Phillips' guilty plea was knowing and voluntary.  The factual basis that Phillips signed in conjunction with his guilty plea, and that this Court discussed with him extensively at his re-arraignment, explicitly specified the drug amounts for which he accepted responsibility.[52]

---

[52] R. Doc. No. 165.

In addition, the factual basis repeatedly stated that the government performed tests to verify that the seized drugs were in fact the illicit substances that the government alleged them to be.[53]

### CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Phillips' motion[54] to vacate, set aside, or correct his conviction and/or sentence pursuant to 28 U.S.C. § 2255 is **DENIED** and that this matter is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, November ___10th___, 2011.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[53] R. Doc. No. 165.

[54] R. Doc. Nos. 318 and 323.